IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| BIDDEFORD INTERNET CORPORATION )<br>D/B/A GREAT WORKS INTERNET )<br>and GWI VERMONT, LLC, )<br>)<br>      *Plaintiffs*, )<br>)<br>F.X. FLINN, )<br>)<br>      *Defendant*. ) | Docket No. 2:25-cv-00354<br><br>**JURY TRIAL<br>REQUESTED** |

## COMPLAINT

Plaintiffs Biddeford Internet Corporation d/b/a Great Works Internet and GWI Vermont, LLC (collectively, "GWI") for its complaint against F.X. Flinn, alleges as follows:

### The Parties

1.  Plaintiff GWI Vermont, LLC is a limited liability company whose sole member is Plaintiff Biddeford Internet Corp. d/b/a Great Works Internet, a corporation organized under the laws of Maine, with a principal place of business at 40 Main Street, Suite 13-127, Biddeford, Maine 04005.

2.  F.X. Flinn is an individual domiciled in Windsor County, Vermont. Mr. Flinn is the chair of the governing board of East Central Vermont Telecommunications District.

### Jurisdiction and Venue

3.  The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and because complete diversity of citizenship exists. Plaintiff Biddeford Internet Corporation d/b/a Great Works Internet is a Maine citizen. Plaintiff GWI Vermont, LLC is a Maine citizen. Defendant F.X. Flinn is a Vermont citizen.

1

4. The Court has personal jurisdiction over F.X. Flinn because he is a Vermont citizen and because this action arises out of F.X. Flinn's tortious acts taking place within the State of Vermont.

5. Venue lies in the District of Vermont pursuant to 28 U.S.C. § 1391(b)(1)-(2) because F.X. Flinn resides in the District of Vermont and because a substantial part of the events or omissions giving rise to GWI's claims occurred in the District of Vermont.

## The Facts

6. GWI is in the business of constructing, maintaining, operating and providing internet connectivity services and Voice Over Internet Protocol-based phone services to, among others, subscribers with the East Central Vermont Telecommunications District ("ECFiber" or the "District") presided over by its governing board chairman, F.X. Flinn.

7. In or about January 1, 2016, ECFiber entered into a 10-year Operating Agreement with a third-party company, ValleyNet, Inc. ("ValleyNet"), pursuant to which ValleyNet was retained to provide similar services to ECF's subscribers to those now provided by GWI.

8. ValleyNet encountered difficulty meeting quality and financial goals, and on top of that confronted two serious issues in 2021 and 2022. Specifically, in 2021, ValleyNet and ECFiber were sued by a group of Vermont farmers who claimed that the farmers' cows had been hurt by ingesting stainless steel wire in their feed for which ValleyNet and ECFiber were responsible. Then in 2022, a ValleyNet contractor was indicted and later found guilty of embezzling more than a half-million dollars from ValleyNet's accounts.

9. Accordingly, at the request of the ValleyNet Board to GWI, ECFiber, ValleyNet, and GWI entered into an Assignment and Assumption Agreement dated as of December 31, 2022,

in which GWI assumed from ValleyNet the Operating Agreement and all of ValleyNet's rights and obligations thereunder.

10. Since that date in connection with its work on behalf of ECFiber under the Operating Agreement, GWI has made significant investments of money, time, manpower and training to enhance and broaden ECFiber's internet infrastructure and network. Since taking over from ValleyNet, GWI has been able to improve the performance of ECFiber, and has both maintained quality and met financial goals.

11. The 10-year term of the Operating Agreement assumed by GWI ends on December 31, 2025. In that connection, the Operating Agreement provides:

> "This Agreement shall automatically renew itself for additional and successive terms often (10) years each, unless notice of non-renewal shall be furnished by one party to the other, in writing, at least one hundred and eighty (180) days prior to the original or successive termination date."

Accordingly, GWI has been negotiating in good faith with ECFiber to renew the Operating Agreement for another ten-year term. Those negotiations, however, have been thwarted by F.X. Flinn's unlawful and egregious conduct as set forth hereinafter.

## F.X. Flinn's Scheme

12. In or about the latter part of 2024, F.X. Flinn hatched a plan to form his own management company and then replace GWI with a combination of a new operating company and his own venture (a management company playing a role identical to that of GWI), so as to pay himself a substantial amount of money out of the funds previously paid by ECFiber to GWI.

13. However, in consummating his plan, F.X. Flinn faced and continued to face a significant hurdle. ECFiber has no employees and no experience in performing the work that GWI performs. Indeed, ECFiber stated in its Limited Offering Memorandum accompanying its sale to the public of $7,530,000 in Revenue Bonds the following:

3

> "Both ECF and the District have always contracted with an experienced internet service provider to run the ECFiber business subject to broad policies established by the board through contractual mechanisms designed to prevent interference with proper business practices. Board members have no control over or responsibility for day-to-day operations."

As such, F.X. Flinn has had to scheme around the fact that, while he and ECFiber represented to bondholders that ECFiber has "always contracted with an experienced internet service provider to run the ECFiber business," there is presently no experienced network operator available that can readily assume operation of the network from GWI. As a result, Mr. Flinn has set upon a plan to literally poach GWI's business and its opportunity with ECFiber for himself.

14. As a first step in implementing his insidious plan, F.X. Flinn embarked on a scheme to steal GWI's confidential and propriety information and trade secrets, which was soon followed by his taking active steps to steal GWI's employees, and to also cause ECFiber to begin to negotiate on a renewed deal with GWI in bad faith, all with the end game of taking the opportunity of a new Operating Agreement for himself.

15. Accordingly, in early February 2025, F.X. Flinn coopted a GWI employee to furnish to him a surreptitiously recorded confidential meeting of GWI personnel in order to gain access to GWI's proprietary information and to falsely contend that GWI was in breach of the Operating Agreement.

16. Specifically, on February 11, 2025, GWI's leadership convened a confidential meeting at which only GWI personnel were invited and present, to discuss GWI's negotiating strategy with ECFiber as well as various other confidential aspects of GWI's business. At the meeting, GWI's leadership discussed, among other things, GWI's economics, sales strategy, and business processes, as well as its strategies for reaching a renewed Operating Agreement with ECFiber.

17.     Unbeknownst to GWI leadership, a GWI employee (Employee 1) acting in concert with F.X. Flinn audio and video recorded the approximately two-hour GWI meeting, and then shared the contents of those recordings with Mr. Flinn.

18.     On the following day, F.X. Flinn caused a letter to be sent to GWI, a copy of which is attached as Ex. A, alleging various ways in which GWI purportedly has breached the parties' Operating Agreement.  The letter was and is frivolous and pretextual, and GWI told ECFiber so in a reply letter dated February 14, 2025, a copy of which is attached as Ex. B.

19.     Nonetheless, on February 19, 2025, F.X. Flinn caused ECFiber to write GWI a letter stating that ECFiber was "no longer interested in negotiating any extension of its relationship with GWI."  There is absolutely no basis for Mr. Flinn's position against GWI other than the fact that he wants to take GWI's business opportunity with ECFiber for himself.

20.     Even before the above-referenced notice to GWI, F.X. Flinn caused ECFiber to retain two consultants that he himself hand-picked to deliver a pre-ordained message that ECFiber should retain a new management company whose "primary purpose will be to provide strategic guidance, oversee network operations (regardless of the operator), develop in-house expertise, and ensure alignment with ECFiber's mission."  F.X. Flinn failed to disclose his role in the selection of these consultants or his role in the "recommendations" the consultants purportedly reached to establish a new operator and a new management company headed by F.X. Flinn himself.

21.     F.X. Flinn's has approached GWI's employees for the purpose and with the intent of poaching them for a new operating company to be overseen by his new management company, all in furtherance of his scheme.  Indeed, part of the consultants' recommendation is that the new management company:

"Negotiate with GWI employees: If feasible and desirable (and legally permissible), negotiate with selected GWI employees regarding potential transition[.]"

22. As the culmination of his scheme, on March 9, 2025, F.X. Flinn sent an email to the ECFiber governing board, stating:

"A public benefit non-profit called the Vermont ISP Operating Company (VISPO) is being set up this week. Me, Dan Leavitt, and Al Iuppa are the initial directors and will be adopting the bylaws and then nominating directors. Prior to electing them, the executive committee will have to approve them. Our goal will be to have 5 directors in place within the next months and as this is intended to be a working board of people with relevant business experience, who will be compensated with stipends, please get me the names of those you think might be a fit."

23. Despite his clear conflict of interest, Mr. Flinn has advised ECFiber that "The next actionable task of the GB [Governing Board] will be to approve a contract between the District and [his new management company], presumably at the April meeting." [Bracket added].

24. Mr. Flinn's scheme to set up his own management company is in direct conflict with the representations that he and ECFiber made to prospective investors in ECFiber's bonds in their Limited Offering Memorandum, in which they assured the public (and GWI) that:

"The District will undertake the current and future phases of the construction of the Network, and operate and manage the Network <u>with GWI Vermont</u> …" (Limited Offering Memorandum P. 35) (emphasis added).

25. Indeed, Mr. Flinn and ECFiber told the prospective bondholders in the same Limited Offering Memorandum that even the financial projections were done on the basis of a continued working relationship with the experienced team at GWI, representing:

"In developing the financial model for the Network, [our] projections are based on the expected average of all purchased services. The District and GWI Vermont anticipate that these revenue streams will continue for the foreseeable future."

26. Equally troubling is the fact that Mr. Flinn has no "Plan B": if he is not successful in poaching GWI's business and incorporating it into his own management company, ECFiber will

6

have no experienced operator to run its internet operations. Therefore, F.X. Flinn has been stepping up his efforts to take GWI's business, and to persist in taking steps to ruin GWI's relationship with ECFiber and instead take the fruits of that relationship for himself.

27. ECFiber has taken its cue from its chairman F.X. Flinn in negotiating a renewed Operating Agreement with GWI, taking frivolous positions that are factually incorrect and obviously so. For example, ECFiber is adamant that GWI is in breach of the current Operating Agreement because it purportedly has been using ECFiber employees to perform GWI's work. But as ECFiber explicitly informed the investing public on page 13 of its own Limited Offering Memorandum: "The District has no employees." ECFiber's representation to that effect is true, making its claim now about GWI's using ECFiber's employees a complete fabrication, apparently made at the behest of F.X. Flinn to shut the door on GWI so that he can march through it.

## FIRST CAUSE OF ACTION
### Misappropriation of Trade Secrets, 9 V.S.A. § 4601 et seq.

28. GWI repeats and incorporates by reference the allegations in paragraphs 1 through 27 of this Complaint.

29. GWI owns trade secrets protected by law and from which it derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by others who can obtain economic value from their disclosure or use.

30. GWI undertook reasonable efforts to maintain the secrecy of its trade secrets.

31. F.X. Flinn acquired GWI's trade secrets, knowing or having reason to know that the trade secrets were acquired by improper means, namely by soliciting and accepting the surreptitious and unauthorized video-recording of GWI's internal meeting by Employee 1 on February 11, 2025.

32. F.X. Flinn disclosed and/or used GWI's trade secrets, knowing or having reason to know that his knowledge of the trade secrets was derived from or through a person who had utilized improper means to acquire it, namely the surreptitious and unauthorized video-recording by Employee 1 on February 11, 2025.

33. F.X. Flinn's misappropriation was malicious, as it was undertaken in furtherance of a scheme to manufacture a pretext for ECFiber's non-renewal of the Operating Agreement and pave the way for F.X. Flinn's own management company to succeed GWI, for his own personal and pecuniary gain.

34. GWI has been damaged by F.X. Flinn's misappropriation of its trade secrets, for which GWI requests relief in the form of monetary remedies and/or injunctive relief to destroy the recordings (and all copies, notes, summaries, extracts derived therefrom) and to refrain from further misappropriation.

## SECOND CAUSE OF ACTION
### Unfair Competition

35. GWI repeats and incorporates by reference the allegations in paragraphs 1 through 34 of this Complaint.

36. F.X. Flinn engaged in acts of unfair competition against GWI by supervising Employee 1, directing that Employee 1 provide GWI's confidential information to him, improperly obtaining GWI's confidential material from Employee 1 and retaining it, and putting that material to unfair competitive use by disseminating it within ECFiber.

37. F.X. Flinn undertook these acts in order to unfairly disadvantage GWI as part of an ongoing negotiation to renew the Operating Agreement and to bolster F.X. Flinn's scheme to establish a management company in which he would serve in a leadership role that would oversee a new operating company.

38. F.X. Flinn engaged in misappropriation and exploitation of GWI's confidential information, assets, and property for pecuniary gain.

39. GWI has suffered damages as a direct and proximate result of F.X. Flinn's acts of unfair competition, for which GWI requests relief in the form of monetary remedies and/or injunctive relief to destroy the recordings (and all copies, notes, summaries, extracts derived therefrom) and to refrain from further acts of unfair competition.

### THIRD CAUSE OF ACTION
**Tortious Interference with Prospective Business Relationship**

40. GWI repeats and incorporates by reference the allegations in paragraphs 1 through 39 of this Complaint.

41. GWI and ECFiber entered into a valid and enforceable contract, the Operating Agreement, which was up for renewal at the end of 2025.

42. GWI negotiated in good faith with ECFiber in an effort to win a renewal of the Operating Agreement.

43. GWI had a valid business relationship with ECFiber, and a valid and reasonable expectancy of a new renewal of the Operating Agreement.

44. F.X. Flinn had knowledge of this relationship and GWI's expectancy of a renewal of the Operating Agreement that was being negotiated.

45. F.X. Flinn improperly interfered with GWI's prospective business relationship with ECFiber by his improper acts and conduct as aforesaid.

46. GWI has suffered damages due to the loss of expected profits resulting from F.X. Flinn's improper acts of interference.

## FOURTH CAUSE OF ACTION
**Tortious Interference with Contract**

47.     GWI repeats and incorporates by reference the allegations in paragraphs 1 through 46 of this Complaint.

48.     At all relevant times, GWI and ECFiber had a valid contract, the Operating Agreement.

49.     The Operating Agreement provided that no GWI employee would be supervised or report to any ECFiber official.

50.     F.X. Flinn knew about the Operating Agreement and all its provisions but still intentionally, unfairly, and improperly interfered with the contractual relationship between GWI and ECFiber by commandeering and directing Employee 1, to report to him and to undertake tasks that were disloyal to GWI, violated GWI policies, and were for his personal gain.

51.     F.X. Flinn's improper interference caused ECFiber to violate the Operating Agreement and directly harmed GWI.

52.     GWI seeks relief in the form of monetary remedies and/or injunctive relief against F.X. Flinn's further interference in GWI's operations, commandeering of and attempts to poach GWI employees, to the extent permitted by law.

## FIFTH CAUSE OF ACTION
**Negligent Misrepresentation**

53.     GWI repeats and incorporates by reference the allegations in paragraphs 1 through 52 of this Complaint.

54.     F.X. Flinn, as Chair of the Governing Board of ECFiber, made representations in the Limited Offering Memorandum.

55. These representations were made in the course of ECFiber's business and, by F.X. Flinn, in his capacity as Chair of the Governing Board acting within the scope of his duties.

56. These representations were made for the guidance of others, including GWI, in their business transactions.

57. F.X. Flinn, as Chair of the Governing Board, also made these representations while under a public duty to give the information.

58. Those representations included that ECFiber has "always" contracted with an "experienced" Internet Service Provider to run the ECFiber business, and that ECFiber "will undertake the current and future phrases of the construction of the Network, and operate and manage the Network with GWI Vermont under the Operating Agreement and Assignment from ValleyNet to GWI Vermont."

59. As demonstrated by F.X. Flinn's actions and statements as alleged herein, these representations are false.

60. F.X. Flinn has not disclosed his scheme for ECFiber to stand up a management company of which he would be a compensated director.

61. F.X. Flinn, as Chair of the Governing Board of ECFiber, has failed to exercise reasonable care or competence in making these representations in the Limited Offering Memorandum and in failing to ensure that corrective disclosures are made.

62. GWI justifiably relied upon ECFiber's representations in the Limited Offering Memorandum, including by negotiating in good-faith with ECFiber regarding the Operating Agreement, investing capital and deploying human resources into the ECFiber network, reasonably expecting that ECFiber would uphold its bond covenants and representations in the Limited Offering Memorandum.

63. GWI has suffered, and will continue to suffer, damages as a direct and proximate result of F.X. Flinn's negligent misrepresentations.

## SIXTH CAUSE OF ACTION
**Promissory Estoppel**

64. GWI repeats and incorporates by reference the allegations in paragraphs 1 through 63 of this Complaint.

65. In the Limited Offering Memorandum, F.X. Flinn, as Chair of the Governing Board of ECFiber, represented that ECFiber "will undertake the current and future phrases of the construction of the Network, and operate and manage the Network with GWI Vermont under the Operating Agreement and Assignment from ValleyNet to GWI Vermont."

66. This representation constituted a promise to GWI that F.X. Flinn should have reasonably expected to induce action or forbearance.

67. Future phases of the construction of ECFiber's network remain to be constructed.

68. GWI is presently engaged in constructing and operating the network.

69. GWI reasonably relied on F.X. Flinn's promise, including by negotiating in good-faith with ECFiber regarding the Operating Agreement, investing capital and deploying human resources into the ECFiber network, expecting that GWI would continue to work with ECFiber to complete construction of the network.

70. It is unjust for F.X. Flinn to renege on this promise, and to scheme to steal GWI's employees to staff a non-profit network operator, and to create a management company he would lead that would supervise the non-profit network operator.

71. GWI has suffered, and will continue to suffer, damages as a direct and proximate result of F.X. Flinn's actions.

72. Injustice can be avoided only be enforcing F.X. Flinn's promise.

## SEVENTH CAUSE OF ACTION
### Unjust Enrichment

73. GWI repeats and incorporates by reference the allegations in paragraphs 1 through 72 of this Complaint.

74. Over the course of its years-long dealings with F.X. Flinn, GWI has conferred numerous benefits to ECFiber pursuant to the Operating Agreement.

75. GWI has made and continues to make significant investments and operational improvements in the ECFiber network.

76. GWI has trained its employees and deployed its employees to operate the ECFiber network.

77. GWI has undertaken this work in order to ensure the delivery of broadband services to commercial, residential, government and educational subscribers in the State of Vermont and in the District, as provided in the Operating Agreement.

78. GWI did not undertake this work and assemble a team of trained staff simply for F.X. Flinn to poach that staff, misappropriate GWI's confidential information, and commandeer GWI's operations and business for his personal financial gain.

79. It would be inequitable and unjust for F.X. Flinn to retain these benefits, through his own unlawful actions, without compensating GWI for value.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Biddeford Internet Corporation d/b/a Great Works Internet and GWI Vermont, LLC ("GWI") respectfully request that this Court:

A. Award GWI compensatory damages;

B. Award GWI damages for actual loss and unjust enrichment, or in the alternative, a reasonable royalty;

C.      Award GWI punitive damages pursuant to 9 V.S.A. § 4603(b);

D.      Enter judgment as against F.X. Flinn individually and in his official capacity as Chair of the governing board of East Central Vermont Telecommunications District;

E.      Enter an Order(s) preliminarily/permanently enjoining F.X. Flinn from misappropriating GWI's trade secrets and confidential information, interfering in GWI's operations, interfering with GWI's contracts and prospective business relations, and soliciting GWI's employees;

F.      Award GWI restitution and disgorgement remedies;

G.      Award GWI attorneys' fees, costs, and interest allowed by law; and

H.      Grant such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff Biddeford Internet Corporation d/b/a Great Works Internet and Plaintiff GWI Vermont, LLC demand a jury trial on all issues so triable.

        Respectfully submitted,

        QUINN EMANUEL URQUHART
         & SULLIVAN, LLP

        */s/* Harvey J. Wolkoff
        Harvey J. Wolkoff
        111 Huntington Ave, Suite 520
        Boston, MA 02199
        (617) 712-7100
        harveywolkoff@quinnemanuel.com


        DOWNS RACHLIN MARTIN PLLC

        */s/* Evan J. O'Brien
        Evan J. O'Brien
        199 Main Street
        P.O. Box 190
        Burlington, VT 05402-190
        Tel: (802) 863-2375
        eobrien@drm.com

        *Attorneys for Plaintiffs Biddeford Internet Corporation d/b/a Great Works Internet and GWI Vermont, LLC*

Dated: March 26, 2025